BENJAMIN A. PORTER, et al., *against* EDMUND CLEMENTS.

APPEAL *from Phillips Circuit Court.*

All exceptions to the general rule, that all persons materially interested in the result of a suit in chancery, must be made parties, are so qualified, that it must be apparent to the Court, that by waiting to join all persons interested, the delay and inconvenience would obstruct, and probably defeat, the purposes of justice ; and that the rights of the persons dispensed with as parties, will not be prejudiced.

Otherwise, such is the solicitude with which the interests of absent persons, not made parties, are watched over and protected, the Court will not proceed to make a decree.   And if a party refuses to join as plaintiff, he may be made a defendant.

Where there is such a parity of interests between persons, that a decree must affect both, the bill must be brought in both their names, or in their behalf, that all those interests may be represented and protected.

If brought by the plaintiff alone, without joining those equally interested, and who are to be equally affected by a decree, when by his own showing he could have done so, the bill will not be sustained by the Court, for want of proper parties.

On a bill to foreclose a mortgage, all persons, having either a legal or equitable interest, are necessary parties.   All who are entitled to the money, must be before the Court. One cannot proceed for his own part only.

So one of several mortgagors cannot be permitted to redeem and take a conveyance of the mortgaged property to himself, without the consent of the others.

It is indispensably necessary, that all persons who have a clear right to disengage the property from all incumbrances, in order to make their own claims beneficial or available, should be joined.

If the want of proper and necessary parties is apparent on the face of the bill, it may be taken advantage of on demurrer.   If vital to the character of the bill, or the relief asked, it may be insisted on at the hearing; and if a decree is made, it may be reversed for error.

Where the question arises in equity, whether an instrument is to be regarded as a conditional sale, or as a mortgage, the character of the conveyance is determined by the intention of the parties, by an agreement in the deed, or in a separate instrument, showing that it was to be considered only as a security for the payment of money.

So if it be absolute on its face, if intended merely as a security for a debt, parol evidence is admissible, to prove that fact.

Sales, with an agreement for a re-purchase within a given time, known as conditional sales or defeasible purchases, though narrowly watched, are valid, and to be taken strictly as independent dealings between strangers; and the time limited for the re-purchase must be strictly observed, or the vendor's right to reclaim his property is lost.

If the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage ; but if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the right of refunding it, if he pleases, by a given time, and thereby entitle himself to a re-conveyance, it is a conditional sale.

An instrument by which A. states that he has purchased of B. certain negroes, for $400 to him in hand paid, and if they neither die, run away, or are stolen, and B. pays him $500 within two years and six months, he will re-convey to him, accompanied with a delivery of the property, B. being then embarrassed, and executions against him, is not a mortgage, and the covenants contained in it are personal between A. and B.

There was, in such case, no liability on B. to pay if the negroes died, nor in any event, unless he chose.   A. took no bond for re-payment, claimed no interest, and did not covenant to sell the increase.

Porter, et al., *against* Clements.

And when A., soon after executing this agreement, sold four of the negroes to C., there was no privity of contract between B. and C. So soon as they were sold, A.'s covenant with B. was broken, and an action for damages could have been sustained against him.

In such case, as B. has a plain and adequate remedy at law against A., he cannot proceed in equity against C.

In chancery. Clements filed his bill in Phillips Circuit Court, to November Term, 1835, and by it alleged: That about September, 1829, he, having occasion for money, applied to Sylvanus Phillips to lend him the same, and Phillips then lent him $400; that to secure the re-payment thereof, Clements executed to Phillips an instrument in writing, purporting to be a bill of sale for four slaves, who are named, of the value of about $1500: that at the particular request of Phillips, Clements induced his eldest daughter, then under age, to join him in said bill of sale: that it was not meant or intended that the transaction should amount to an absolute sale of the slaves to Phillips; but that, at the time of its execution, Phillips gave to Clements and his daughter an instrument in writing, explanatory of the transaction, (which is exhibited), whereby he agreed that he would re-convey said negroes, provided Clements or his daughter should repay him the sum of five hundred dollars, within two years and six months from date: that before that time elapsed, about 30th October, 1830, Phillips died, leaving a widow, Rebecca, who afterwards intermarried with John Burriss, both of whom are made defendants, and several children, only one of whom (Caroline) survived, and was under age, and who is also made a defendant: that no administration was had on his estate, nor any guardian appointed for the children, up to the time of filing the bill: that Phillips, previous to his death, sold and delivered the slaves to Porter, with the exception of one of them, (Harriet), who had always remained in possession of Clements: that Porter, at the time of the transaction, knew all the facts previously stated, and took the negroes, *to stand in the place and stead of Phillips;* and that, after the delivery of the slaves to Porter, one of them had two children: that he applied to Porter, and offered to pay him the five hundred dollars, and demanded the delivery of the negroes and their increase, which Porter refused.

Upon this statement, he prayed an account of the services and profits of the slaves, received by Porter, or which might have been

received, and an account of all other moneys received by the defendants, in or towards satisfaction of the mortgage; and an account to be taken of the five hundred dollars, averred to have been tendered, without interest from the time of tender; and if, upon such accounts, the profits, &c., amounted to more than the five hundred dollars and interest, for a decree for the balance; and offering to pay the balance, if any found against him; and for a decree for the delivery of the negroes, and general relief, and a cancellation of the bills of sale, &c.

The instrument executed by Phillips, is as follows:

" Be it remembered, that Edmund Clements, and Louisa Caroline Clements, daughter of the said Edmund, and within the age of twenty-one years, of the county of Phillips, in the Territory of Arkansas, have this day sold and delivered me the five following negro servants and slaves, to wit: Tony, Fanny, Harriet, Violet, and Milley, for the sum of four hundred dollars, to them in hand paid. Now, should they, within two years and six months from this date, pay me five hundred dollars, good and lawful money of the United States, then, and in that case, I obligate myself to re-convey unto them the aforesaid negro servants and slaves, with this proviso, that they do not die, run away, or be stolen; then, and in that case, this obligation to be null and void, otherwise to be and remain in full force and effect."

The bill was accompanied by an affidavit of its truth.

At November Term, 1835, Porter filed an informal answer in the case. At May Term, 1836, the complainant had leave to amend his bill, which he did; and a guardian was appointed for Caroline Phillips.

At December Term, 1836, on motion of complainant, Porter was required *to amend his answer*, and to file an amended answer during the term. Porter then asked leave to file *a plea*, which motion was overruled, and he excepted. The complainant then moved that the bill be taken pro confesso, and the cause proceed to hearing, which was overruled, and he excepted; and leave was given Porter to file his amended answer within twenty days.

On the 20th January, 1837, Porter filed his amended answer. In it he alleged, that at the time mentioned in the bill, he purchased of

Phillips the four negroes, *Tony*, *Fanny*, *Violet*, and *Milley;* and that since his purchase, *Fanny* had had two children, *Armstead* and *Charles;* that he had no participation in, or knowledge of, the trade or transaction between Phillips and Clements; but that his understanding was, at the time, that it was an absolute sale, and not a mortgage.

It further stated, that at the time of his purchase, he promised Phillips, that if he, Phillips, should, at any time within *two years,* give to him, Porter, five hundred dollars, he would, *if the negroes were then in his possession,* return them to Phillips; but that he was not bound *to keep* the negroes until that time; and that this agreement, giving Phillips the right to re-purchase, did not extend to any increase of said negroes. It further avers, that if Phillips held only under a mortgage, it was unknown to him, Porter; and if Phillips violated his agreement, it was not by Porter's procurement, aid, or countenance; and that he did not take the negroes, to stand in the stead of Phillips. That he was in no way bound to give, sell, or otherwise put in possession of said Clements the negroes, at or for any price, or at any time.

It further avers, that Clements had not, at the time of filing his bill, nor at any time afterwards, any right, title, claim, or interest in the slaves; and that he had, before filing the bill, transferred and conveyed away all the title he ever had to them; and therefore had no right to bring suit. It denies that Clements ever offered or caused to be offered to him $500, to redeem the negroes; but admits that one Miller Irvin did once offer to give him $500, provided he would convey the negroes to certain minors, whom Irvin pretended to represent; and that it may be true that he, Porter, offered to give him the four negroes for $500, reserving to himself the two children ; and denies all fraud and combination.

It then answers specially to several interrogatories: That he understood the sale to Phillips to be absolute; and the bill of sale absolute; and if not so, it was a fraud on the part of Clements, to enable Phillips to entrap him, Porter. That Phillips did *not* inform him, when he sold him the slaves, that it was mortgaged property, and redeemable. That when sold to him, Tony was worth $200; Fanny worth less than nothing, being sickly and drunken, and a continual expense, without

any profit; and that Violet and Milly were worth $200; that Armstead is worth $300, and Charles $200.

He further states, that he received the negroes in September, 1829, and during that year Violet died. About the 14th of February, 1832, Tony was taken under a deed of trust, executed by Clements before his sale to Phillips; and on the 12th of June, 1832, was sold at private sale, to satisfy the deed of trust, and bought by Porter, for $84 30, the amount of the debt for which he was put in trust: for all which, reference is made to the records of the Circuit Court of Phillips. That Fanny afterwards died. That the services of all the negroes have not been worth near so much as their food, clothing, doctors' bills, and other expenses.

At the same time, Caroline Phillips, by her guardian, filed an answer, wherein, for matters apparent on the face of the bill, she protested against, and declined making any answer thereto.

Burriss and his wife also filed an answer, whereby they declined answering, for matters apparent in the bill, and on the ground that they were improperly made parties, and also, on the ground that Clements had parted with all his claim to the negroes, and had no right to sue.

At July Term, 1837, Clements excepted to each answer, and his exceptions were allowed, and, by consent, leave was given to file amended answers within sixty days.

Porter then filed his amended answer as to the points excepted *to,* and thereby responded:

That to the best of his knowledge, information, remembrance, and belief, he was told, informed, and knew nothing but that the transaction between Phillips and Clements was an absolute sale.

That he was not present, nor in any way privy to the contract between Phillips and Clements and his daughter, and *knew nothing of,* nor was informed or told of, any such writing as Phillips' obligation to re-convey.

That no person ever informed him that the transaction between Phillips and Clements was a mortgage. That Fanny was of no value; and that he kept no account of her labor or expense; nor any account

Porter, et al., *against* Clements.

of the profits and expenses of the other negroes; but that the expenses exceeded the profits some fifty or one hundred dollars a-year, not including the increasing value of the children. That Fanny died about March 1st, 1832; and Violet, about Oct. 30, 1839.

That no money was ever tendered to him, by Clements, or any other person for him, or in his name. That the money offered him by Irvin, was paper money, in part. That he does not know whether Irvin was the agent of Clements; that he did not come in Clements' name; nor has Porter ever seen any thing constituting him Clements' agent.

That Phillips died about Oct. 30, 1830; and no administration has ever been had on his estate.

No answer or amendment was filed by Caroline Phillips, or Burriss or his wife, after exceptions allowed.

A paper is copied in the transcript, purporting on the face thereof to be a replication to the answer and amended answer of Porter; but it is not noticed in the record, nor marked filed.

At December Term, 1837, the cause was heard, on *bill, answer, exhibits*, and *testimony;* and the decree made was in substance as follows: That, on proof of the loan, and of fraud in Porter, in attempting to convert a mortgage into an absolute bill of sale, the Court decreed an existing right in the complainant to redeem. That the proof abundantly showed the real nature of the transaction between Clements and Phillips, and that Porter was privy thereto, and purchased with full notice of the same. And it was therefore decreed, that Porter should deliver to Clements the negroes *Tony, Milly, Armstead*, and *Charles;* and that all instruments of writing and bills of sale, between Phillips and Porter, and Clements and Phillips, should be cancelled; and that the Clerk and Master should take an account of the annual hire and profits of *Tony, Milly*, and *Fanny*, from the time they came to Porter's possession—the two first, to the date of the decree; the last, to her death;—and an account of all moneys laid out and expended by Porter, for medical services for them, of expenses of raising Armstead and Charles, and of all moneys laid out by Porter in purchasing Tony under the sale by virtue of the deed of trust mentioned in his answer.

To the depositions taken, it is not necessary to refer.

47

At December Term, 1838, the decree before entered was set aside, for error on its face, and a new decree entered, the same as the former, except that the Clerk was directed to take an account also of the interest on the money paid by Porter for Tony, on the sale under the deed of trust; and also of four hundred dollars, the mortgage money, *without interest.*

At April Term, 1839, the Clerk, as auditor, made his report, which was set aside, on exceptions allowed; and at November Term, 1839, the Master made his report, by which he found a balance due from Clements to Porter, of one hundred and seventy-four dollars and sixty-four cents.

This report was received and affirmed, and it was thereupon decreed, that Porter should deliver over the negroes, upon payment to him, by Clements, of the balance so ascertained; and that Porter should pay all costs. From this decree Porter appealed.

PIKE, for the appellant:

In considering the questions arising upon this record, it is first necessary to ascertain the effect produced by the failure of the complainant to file a replication to Porter's answer, and proceeding to a hearing upon bill and answers. That no replication was filed, is apparent upon the record; for, although there is a paper in the transcript, purporting to be a replication, yet it does not appear ever to have been filed, or noted of record; and, moreover, the decree expressly shows that the cause went to hearing on bill, answer, exhibits, and testimony.

The rule is laid down by *Cooper* to be, that where no replication is filed, *the whole of the answer of the defendant is to be taken to be true,* because he has been precluded from substantiating it by evidence; and therefore it behoves the plaintiff to look attentively into the answer, to see that the effect of the defendant's admissions is not avoided by any new matter there introduced. *Cooper Eq. Pl.,* 329. The same rule is laid down in 1 *Newland,* 250; and that no evidence can be taken until a replication is filed. See also *Blake's Ch.,* 126, 129. In fact, no part of the answer being put in issue without a replication, it is of necessity all admitted to be true. *Gresley,* 167. This admission is broadly declared to be *plenary,* and not *partial. Gresley,* 19. In

Porter, et al., *against* Clements.

such case, the answer must be admitted to be true *in all points*, and no other evidence to be admitted, unless it be matter of record, to which the answer refers, and is provable by the record. *Lord Clarendon's Orders, Bea.* 181. It is even doubtful whether the rule be not the same when the plaintiff is an infant. Where the plaintiff is of age, said *Lord Chancellor Hardwicke,* in *Legare vs. Sheffield,* 2 Atk., 377, his failing to reply is *an admission of the facts in the answer;* but an infant can admit nothing. But Sir *Joseph Jekyll,* in *Thurston and Dechair, an infant, vs. Nutton,* quoted in 3 *P. Wms.* 237, ruled that the fact of the plaintiff being an infant, could make no difference as to the defendant's rights.

Precisely the same rule is recognized by Story, *Eq. Pl.,* 673; and *Gilbert, For. Rom.,* 45. And it is as well established in America as in England. Thus, in *Dale vs. McEvers,* 2 *Cowen,* 118, in the Court of Errors of New-York, Woodworth, J., said, " This cause having been heard in the court below upon the pleadings," (bill and answer), " the defence set up in the answer must be taken as true." Sutherland, J., said, " No replication having been put in to the answer, it is to be considered as true throughout, upon the plain and obvious principle that the respondents, by not filing a replication, and thereby putting the facts contained in the answer in issue, have deprived the appellants of the opportunity to prove them. The same rule is laid down in *Mills vs. Pitman,* 1 *Paige,* 490. So in *De Peyster vs. Colden,* 1 *Edw.,* 63, the Vice Chancellor said, " You can never be allowed to introduce evidence not contained in the answer, when the cause is set down on bill and answer only."

If the rule thus laid down be correct, and that it is cannot be doubted, then the facts in this case, on which the decree should have been based, are, that in September, 1829, Clements made to Phillips an absolute bill of sale to certain negroes, and delivered the negroes into his possession, and at the same time took from Phillips an instrument of writing, by which Phillips agreed to re-convey the same negroes to Clements and his daughter, upon their paying him, within two years and six months, the sum of five hundred dollars. That Porter, afterwards, and without knowing that the transaction between Phillips and Clements was not an absolute sale, bought four of the negroes from

Phillips, and agreed to re-sell them to Phillips at the end of two years, if they should then be in his possession, upon Phillips paying him $500. That neither Phillips or Clements, or any agent of Clements, ever offered to pay him the $500. That Clements had parted with all his interest in the negroes, and had no right to bring the suit; and furthermore, that Tony, one of the slaves, had been sold under a deed of trust, executed by Clements, before his sale to Phillips, and had, at that sale, been bought by Porter.

The allegation that Clements had parted with all his interest in the subject matter of the suit, stands entirely uncontradicted, even if this Court should consider the evidence taken in the case; and upon this point alone, no decree could have been rendered for Clements.

We submit, therefore, the following points for the consideration of the Court:

*First.* That if the transaction between Clements and Phillips was a mortgage, and not a conditional sale, still he had lost the right to redeem, except on payment of costs.

*Second.* That if it was a mortgage, as between Clements and Phillips, yet Porter was a *bona fide* purchaser, without notice thereof, and therefore the negroes, upon the purchase, became his, absolutely, discharged of the mortgage.

*Third.* That the bill should have been dismissed at the hearing, because Clements had no interest in the event of the suit, and no right to be a party.

*Fourth.* That the bill should have been dismissed, because of too many parties being made defendants.

*Fifth.* That the decree is erroneous, because it makes no disposition of the case as to the other defendants.

*Sixth.* That the decree is erroneous, because it directs the negro Tony, who had been purchased by Porter, under a sale made by virtue of a deed of trust from Clements, to be delivered to Clements.

*Seventh.* Because it allows no interest on the mortgage money, five hundred dollars.

*Eighth.* Because it directs the auditor to take an account of the hire and profits of the slaves, from the time they came into possession of Porter.

Porter, et al., *against* Clements.

*Ninth.* Because it directs an account of the hire of Tony, and charges the same against Porter.

*Tenth.* Because it gives costs against Porter.

As to the first point, it is laid down by *Story,* 2 *Eq.,* 296, that a mortgage of personal property is a conditional transfer or conveyance of the property itself; and if the condition is not duly performed, the whole title vests absolutely at law in the mortgagee, exactly as it does in the case of a mortgage of lands. The same rule is declared in *Brown vs. Bement,* 8 *J. R.,* 97, where the Court said: "A mortgage of goods is an absolute pledge, to become an absolute interest, if not redeemed at the specified time." And this principle is reiterated and enforced in *Ackley vs. Finch,* 7 *Cowen,* 290; *Langdon vs. Buel,* 9 *Wend.,* 80; *Patchin vs. Pierce,* 12 *Wend.,* 61.

It is true that the equity of redemption may still be asserted by the mortgagor, by bill in equity, after such failure. 2 *Story Eq.,* 297; *Patchin vs. Pierce,* 12 *Wend.,* 61. But this is only allowed upon the common condition as to payment of costs; which is, that "a mortgagee, whether plaintiff in a bill to foreclose, or defendant in a bill to redeem, shall have his costs." 1 *Newl.,* 397. The exceptions to this rule are, where the mortgagee sets up an unjust defence, and where there is an actual tender of *principal* and *interest* made before filing the bill. 1 *Newl., ub. sup.* In this case, the answer being admitted to be true, and the Court having erred in receiving or considering testimony contradicting it, there is a plenary admission on the record, that no tender ever was made by Clements or his agent, or by any body in his name, to Porter; and that the tender made by Irvin, for other persons than Clements, was not of principal and *interest,* but of principal alone; and moreover, was in part in paper money. It was error, therefore, to decree costs against Porter.

The same rule as to costs is to be found in —— *vs. Trecothick,* 2 *Ves. & Bea.,* 181, where LORD ELDON so stated it, and said that it was almost universal, but that there were exceptions to it, arising from the conduct of the mortgagee. And he instanced, as an exception, the case of *Detillin vs. Gale,* 7 *Ves.,* 583, decided by him, where he admitted that a mortgagee was, *prima facie,* to have his costs; but, as in that case, the great expense was incurred in a successful endeavor

of the mortgagor to prove, what he established, that the mortgagee had charged him with a great deal more than he ought, in previous transactions between them, where the mortgagee was an agent, and in consideration of which the mortgage had been given; the Chancellor therefore refused the mortgagee his costs, as to so much of the suit as related to that bill. But he admitted that there was no instance in which a mortgagee had been called on to pay costs; and that it was clear that, as to some costs, he *could not* be called upon, for some are the necessary effect of the suit to redeem; and he therefore gave the mortgagee his costs, *down to the answer.*

As to the second point, the fact that Porter was a *bona fide* purchaser, without notice of the instrument of defeasance, or knowledge that the transaction between Clements and Phillips was a mortgage, is broadly asserted in his answer, and he has replied fully to every allegation and interrogatory which tended to affect him with notice or knowledge. It is therefore fully admitted upon the record, that he was a bona fide purchaser, without notice. This being the case, the most ample protection is thrown around him in equity. " Such a person," says Story, " is a favorite in the eyes of Courts of Equity." 1 *Eq.*, 415. The principle of protection to him, applies to cases of every sort, where an equity is sought to be enforced against a bona fide purchaser of the legal estate, without notice. *ib.* 417. A Court of Equity constantly refuses to interfere, either for relief or discovery, against a *bona fide* purchaser of the legal estate, for a valuable consideration, without notice of the adverse title. *ib.* 75. This protection applies, not only to bills of relief, but to bills of discovery; and Courts of Equity will not take the least step imaginable against him. 2 *Story Eq.*, 715, 716.

The case of *Whittich vs. Kane,* 1 *Paige,* 202, is directly in point. There an absolute deed was made for certain land, but intended by the parties as a mortgage. The mortgagee died, and his heirs sold the land; and the Court decided, that as the conveyance was absolute on its face, and as the defendants had purchased the premises, and actually paid the purchase money, without notice of the equitable rights of the complainant, their title to the premises could not be disturbed; and that the only remedy of the complainant was against the legal

representatives of the mortgagee, for the moneys received by them on the sale. And this decision was reiterated, and again made, in *Grimstone vs. Carter*, 3 *Paige*, 437, 438.

As to the third point, it is asserted in the answer, and no where denied or disproved, that Clements had, before filing his bill, transferred and conveyed away all his claim to, and interest in, the slaves; and this fact being fully admitted on the record, he stands before the Court without any interest whatever in the event of the suit. It results, as a matter of course, that the assignee of the mortgagor's right to redeem, should have been a party to the bill. If Clements assigned his interest in the slaves, subject to the mortgage, then the assignee could maintain his bill to redeem, without making Clements a party. If, on the contrary, Clements sold the slaves, free of incumbrances, then he was a necessary party. *Story Eq. Pl.*, 171. But in any event, the assignee was a necessary party to the bill, and this results from the general rule that all persons materially interested, either legally or beneficially, in the subject matter of a suit, are to be made parties. *Story Eq. Pl.*, 74. And if a proper party is wanting, the case is to be reversed. *ib.* 77. In cases where the objection of a want of interest applies, when applicable to one of several plaintiffs, it is fatal to the whole suit. *ib.* 199. And in this case, not only is a party made plaintiff who has no interest, but he is the *sole plaintiff*, and the parties really interested are not known in the suit.

The fifth objection depends upon the same principles. It is an invariable rule, that no person should be made a party, who has no interest in the suit, and against whom, if brought to a hearing, no decree can be had. *Story Eq. Pl.*, 198, 199. And a mere witness should not be made a party. *ib.* 201. And if persons having no interest, or mere witnesses, are joined as defendants, the objection may be made at the hearing, or relied on in the answer. *ib.* 203.

The bill in this case shows that Porter was substituted in the place of Phillips. It shows no liability whatever on the part of the heir of Phillips, and much less on the part of the widow; and no decree whatever is taken as to either of them. They are not ordered to account; and it is expressly stated in the bill, that no tender ever was made to Phillips, or his heir or widow.

The sixth objection is equally fatal. It appears, not only from the answer of Porter, but from the face of the decree, that after Tony came to Porter's possession, he was taken and sold, under a deed of trust, executed by Clements, before he mortgaged or sold him to Phillips; and that at the sale, Porter became the purchaser of him. It is manifest, that as the deed of trust was prior to the transaction with Phillips, therefore, admitting Porter to have held as mortgagee, yet, when the negro was taken from him and sold, under a deed paramount to the mortgage, and sold merely for enough to satisfy the deed of trust, the negro became the absolute property of the purchaser, whoever he was. Suppose a third person had bought him, would he not have obtained the absolute property in him? Undoubtedly. The mortgagor could not claim the negro, or retain any interest in him; and the mortgagee's rights were extinguished, as a matter of course. If the negro had sold for more than would satisfy the deed of trust, the mortgagee would have been entitled to receive the residue, and compelled to account therefor, upon the mortgagor's being allowed to redeem. But if merely Clements' equity of redemption was sold, then of course Porter became the absolute owner of the slave, and his equitable was merged in his legal estate.

Upon what ground the Court below decreed a return of the negro Tony, we are at an utter loss to decide. They must have imagined that after Porter bought him, he held him, by implication of law, as a trustee for Clements. But how they arrived at this conclusion, we cannot imagine. Admit that Porter was a mortgagee of the negro. It is no where alleged or shown that he was aware of the prior mortgage or deed of trust. While he holds the negro as mortgagee, a prior mortgagor steps forward, and, under a power of sale in his prior mortgage, sells the negro. Porter purchases the negro. Does it follow that because he is compelled to do so, or lose a large part of the security for his debt, therefore when he has done so, and thus, by an additional payment, avoided the full consequences of Clements' fraud in mortgaging a negro subject to a prior mortgage, therefore he must hold the negro still as trustee for Clements? On the contrary, he became by the purchase the absolute owner. If all Clements' interest in the negro was sold, he became the absolute owner, of course. If

Porter, et al., *against* Clements.

only the equity of redemption was sold, he had the residue of the title to the negro before, and became absolute owner, and his equitable was merged in his legal title. After Clements had forfeited and utterly lost all his interest in the negro, which he must have done, or the negro could not have been sold under the deed of trust; and after all his interest had been sold, could that interest be again revived, and he again become entitled to redeem, because the second mortgagee had purchased that interest? The principle that where a sale of personal property, mortgaged, is *bona fide* made, the title to the property will vest absolutely in the vendee, is undeniable. It is so laid down in 2d *Story's Eq.*, 297; and see *Tucker vs. Wilson*, 1 *P. Wms.*, 261; *Lockwood vs. Ewer*, 2 *Atk.*, 303: and if this be the case, then of course Porter, upon his purchase, became the absolute owner of the negro Tony, and so much of the decree as refers to him is erroneous.

As to the seventh point, that no interest is allowed by the decree on the mortgage money, it is evident that the decree is so far erroneous, unless it proceeded on the ground that no interest can accrue after a tender of the mortgage money. If it proceeded on *this* principle, it was wrong, because it is alleged in the answer, and of course admitted on the record, that no tender was ever made.

It was also wrong to order an account of the hire and profits of the negroes from the time they came to the possession of Porter. The bill itself shows that Phillips was to re-convey them, upon the payment of five hundred dollars within a given time; and, admitting that Porter was substituted in his stead, the bond of Phillips conclusively repels the presumption that he was to pay any hire, upon re-conveying them. He binds himself to re-convey, on payment of a certain sum; and it must therefore be inferred, that he intended to receive that sum, in addition to their profits. Porter, therefore, could not, in any event, be made to account for their hire, *until after a tender;* and therefore the decree is erroneous, under any supposition. If no tender was ever made, he could not be held to account at all; and certainly not, unless he was allowed interest on the mortgage money; for the profits are always first applied to keep down the interest.

We conclude, therefore, that the decree is manifestly erroneous. Because it is based upon a consideration of depositions which could

48

not be taken without a replication; and, if taken, could not be read, because the answer is to be taken as true in every particular; and there is on the record a plenary admission of the truth of every part of it, which cannot be impugned by evidence.

Because, if Clements had a right to redeem, it could only have been on payment of costs; whereas, costs are adjudged against Porter.

Because Porter was a bona fide purchaser, and no decree of redemption could be had against him.

Because Clements had parted with all his interest in the event of the suit, and was improperly made a party; because the person actually interested was not made plaintiff; and because persons having no interest, and mere witnesses, were joined as defendants.

Because the decree makes no disposition of the case as to three of the defendants.

Because it directs the negro Tony to be delivered up, and directs an account to be taken of his hire; and

Because it allows no interest on the mortgage money, and still directs an account of the hire and profits of the slaves, from the time they came into Porter's possession.

Wherefore, we submit that it should be reversed.

TRÁPNALL, and COCKE, *Contra:*

Although there are a number of errors assigned in this case, yet it will be necessary to notice only a few of the most prominent. For the other assignments mainly depend for support upon the maintenance of those few; and all must stand or fall together.

It is insisted that the answer of the appellant should have been taken as true in all points, since the complainant omitted to file his replication thereto; and that, consequently, the Court erred in looking to the depositions, and decreeing in conformity with the facts as established by the testimony, though positively denied by the answer. We admit it to be true, as a general rule, that where no replication has been filed, and the cause is brought to a final hearing upon bill and answer alone, the answer must be taken as true in all points. But we deny the application of this rule, where depositions have been taken by

Porter, et al., *against* Clements.

consent of parties, and where the cause, without any objection being made, has been set for hearing on bill, answer, and depositions. In such case, the replication is mere form, and the Court will suffer it to be filed nunc pro tunc. *Scott vs. Clarkson's Ex'x,* 1*st Bibb,* 279. " Where, by mistake, a replication had not been filed, and yet witnesses had been examined, the Court permitted the replication to be filed nunc pro tunc." 1*st Smith's Chan. Prac.,* 336; *Mitf. Pld.,* 261. A replication is found among the papers in this cause, and has been copied into the transcript; but, by mistake, it was never marked, filed, or any notice taken of it upon the record. It is evident the Court and the parties all acted under the impression that the replication had been formally filed in the cause. Leave was given to both parties to take depositions generally. The defendant attended at the taking of the depositions, cross-examined the witnesses, and permitted the depositions to be read upon the final hearing, without objection. According to the strict rules of Chancery practice, an order to take depositions cannot be properly obtained until after the filing of the replication. For this reason, the plaintiffs, by not replying, so as to give the defendant an opportunity of taking testimony to prove the averments in the answer, will be presumed to admit the truth of those averments in *all points.* But where an order, granting leave to both parties to take depositions, has been made, and they have proceeded to examine witnesses, the reason of the rule no longer applies, and the Court will consider the filing of the replication as a mere matter of form, and permit it to be done at any time. By the rules of Chancery practice, established in the Courts of New-York, the complainant is compelled to file his replication within ten days after the answer is deemed sufficient; and if he fail to do so, he will be precluded from replying, and the cause shall stand for hearing upon bill and answer. And Hoffman, in his *Chancery Pr.,* 452, in remarking upon the practice under this rule, says, " Where a replication has been filed and served after the regular time, it is customary for the solicitor to refuse or return it, if he means to insist upon strict practice. I should doubt whether his passively retaining it would not amount to a waiver against the positive terms of this rule; although, if he joined in or attended the examination of witnesses, it would clearly be such." From this

authority, and those already cited, it is manifest that all objections arising from the want of a replication, will be considered as waived, where the parties have actually joined in or attended the examination of witnesses. For the assent of the complainant to the truth of the answer, implied by his not replying, will be rebutted and overthrown by his taking depositions to disprove its statements. And the Court will not hold him bound by an implied assent, when they have before them positive and conclusive evidence of his intention to contest the answer, and when testimony disproving its statements has actually been taken. If we be correct in this view of the question, the Court can now direct the replication to be filed, nunc pro tunc; and the case will stand as if it had been filed in due time in the Court below; and this Court will now look to the depositions, and give the complainant the benefit of all the facts proven by them.

The transaction between Phillips and Clements was clearly a mortgage, and not an absolute sale. This is abundantly proven by exhibit A, and by the testimony of several witnesses. Whenever it appears, from the transactions of the parties, to have been the intention of one to lend, and of the other to secure the money lent, by delivering property to the lender, it amounts to a mortgage. *Reed vs. Lansdale, Hardin*, 6.

Although Porter has denied all knowledge of the true nature of the transaction between Clements and Phillips, and insists that he made the trade with Phillips, under the belief that the sale from Clements was an absolute sale, and not a mortgage, yet the testimony proves that Porter was mistaken in this particular, and that he well knew the nature of that transaction, and received the negroes of Phillips, with the express understanding that he was to take them upon the same terms, and subject to the same conditions, of the arrangement subsisting between Clements and himself.

DICKINSON, J., delivered the opinion of the court:

The first question which presents itself for our consideration, is, " Ought the Court below to have entered any decree in favor of Clements, as the case then stood before them?" The covenant of Phillips to re-convey, is made to Clements and his daughter Louisa,

Porter, et al., *against* Clements.

jointly: whether she had an interest in the property sold, or not, does not appear, nor is it important to inquire. The only claim set up in the bill, is founded upon the covenant of Phillips. A Court of Equity aims to complete justice by deciding upon and settling the rights of all who are interested, either legally or beneficially, on the subject matter in dispute; that a decree, when made, may be fully performed, further litigation prevented, and at the same time no injustice be done by a partial view only of the real merits of the case. In the case of *Wood vs. Dummer*, 3 *Mason R.*, 317, the rule and exceptions to it are summed up in the following language: " The general rule is, that all parties materially interested, either as plaintiffs or defendants, are to be made parties. There are exceptions just as old and well founded as the rule itself. When the parties are beyond the jurisdiction, or are so numerous that it is impossible to join them all, a Court of Chancery will make such a decree as it can, without them. Its object is to administer justice; and it will not suffer a rule, founded on its own sense of propriety and convenience, to become the instrument of a denial of justice to parties before the Court, who are entitled to relief. What is practicable to bring all interests before it, will be done; what is impossible or impracticable, it has not the rashness to attempt; but it contents itself with disposing of the equities before it, leaving, so far as it may, the rights of other persons unprejudiced." See also *West vs. Randall*, 2 *Mason R.*, 195.

In *Cockburn vs. Thompson*, 16 *Vezey*, 329, Lord ELDON, referring to the general rule, and the class of exceptions to it, said: " The principle (of the general rule) being founded on convenience, a departure from it has been said to be justifiable, when necessary. And in all these cases, the Court has not hesitated to depart from it, with the view, by original and subsequent arrangement, to do all that can be done for the purpose of justice, rather than hold that no justice can subsist among persons who may have entered into these contracts." All these exceptions, however, are so qualified, that it must be apparent to the Court, that by waiting to join all persons interested, the delay and inconvenience would obstruct and probably defeat the purposes of justice; and by dispensing with them, their rights would not be prejudiced; for otherwise, such is the solicitude with which the interests

of absent persons, not made parties, are watched over and protected, in equity, the Court would not proceed to make a decree. And if a party refuses to join as plaintiff, he may be made a defendant. *Good vs. Blewitt*, 19 *Vez.*, 336; *West vs. Randall*, 2 *Mason R.*, 190 to 198; *Mallow vs. Hinds*, 12 *Wheat. R.*, 193; *Russell vs. Clark's Ex.*, 7 *Cranch*, 72; *Wendall vs. Van Rensselaer*, 1 J. C. R., 349; 1 *Mit. Eq. Pl.*, 57, 63. When there is such a parity of interests between persons, that a decree must affect both, the bill must be brought in both their names, or in their behalf, that all those interests may be represented and protected. If brought by the plaintiff alone, without joining those equally interested, and who are to be equally affected by a decree, when, by his own showing, he could have done so, the bill will not be sustained by the Court, for want of proper parties. Therefore, on a bill to foreclose a mortgage, all persons having either a legal or equitable interest, are necessary parties. All who are entitled to the money, must be before the Court: one cannot proceed for his his own part only. So one of several mortgagors cannot be permitted to redeem and take a conveyance of the mortgaged property to himself, without the consent of the others. It is often proper to make persons parties, and yet, if they are not, the suit may proceed without being on that ground defective; but it is indispensably necessary that all persons who have a clear right to disengage the property from all incumbrances, in order to make their own claims beneficial or available, should be joined; for, unless all the mortgagors or their representatives are made parties, a complete decree, embracing the whole subject matter, and declaring the rights of all who are interested in the estate, could not be made; and if the want of proper and necessary parties is apparent on the face of the bill, the defect may be taken advantage of on demurrer. If the defect is vital to the character of the bill, or to the relief asked, the objection may be insisted upon at the hearing; and if the Court proceed to make a decree, it may be reversed for error, on that account. *Cooper Eq. Pl.*, 33, 185; *Mitf. Eq. Pl. by Jeremy*, 180; *Troughton vs. Binkes*, 6 *Ves.*, 573.

Is there any other defect upon the face of this bill? Clements and daughter united in the conveyance to Phillips, and he covenanted to re-convey to them jointly. There is clearly a unity of action and of

interest, indivisible and inseparable. It is upon the covenant to them jointly, he claims relief. Under this decree, her interests are wholly unprotected; the whole of the property is given to the one, to the exclusion of the other, who has had no opportunity of asserting her rights, and who has equally as good a claim, and to the same extent; nor does the decree decide upon the whole subject matter in litigation, as regards the parties; for Porter is as much responsible to the daughter as to the father. The bill admits she is of age, nor does it show any reason why she does not join in the suit. Her interests, instead of being represented, have been wholly overlooked and disregarded; and by permitting the decree to stand, made, as it evidently is, from a partial view of the merits, great injustice might be done her, while we will do the plaintiff right: so on the other hand, we will take care that the defendant is not doubly vexed, or the interests of the absent sacrificed and left unprotected, because of the plaintiff, who might have made all the proper parties at first, and whose fault it was that it was not so done.

The omitting to make Louisa Caroline Clements a party plaintiff in the suit, without showing sufficient cause for so doing, was a sufficient cause for the Circuit Court to have refused a decree to the plaintiff; but as that Court proceeded to make a final decree, as between Clements and Porter alone, we are of opinion that the omission is a defect fatal to the decree.

Having disposed of this question, and clearly demonstrated, as we think, that the decree, as entered, is erroneous, and must, for that cause, be reversed and set aside, we will look into the instrument which the plaintiff has made a part of the bill, and upon which he founds his claim for redemption. There is some embarrassment and conflict of opinion manifested in the cases, as to what shall constitute a mortgage; and it is equally as difficult to define with precision the rules which regulate implied or constructive notice; for it depends upon all the varied circumstances of the case, and whether there has been an exercise of ordinary diligence and understanding in making the inquiries. Suspicion of notice is not sufficient; there must be clear and strong circumstances, in the absence of actual notice. In equity, the character of the conveyance is determined by the intention of the parties,

by an agreement in the deed, or in a separate instrument, showing it was to be considered only as security for the payment of money; so if it be absolute on its face, if intended merely as a security for a debt, parol evidence is admissible, to show that fact. But there is a material difference between a conditional sale and a mortgage. Mr. Kent, in his Commentaries, (4 vol., 143,) says: " The case of sale, with an agreement for a re-purchase within a given time, is totally distinct, and not applicable to mortgages. Such conditional sales or defeasible purchases, though narrowly watched, are valid, and are to be taken strictly as independent dealings between strangers; and the time limited for the re-purchase must be precisely observed, or the vendor's right to reclaim his property will be lost." In the case of *Poindexter vs. McCannon*, 1 *Dev. Equity Cases*, 273, the Court said the test of distinction is this: *If the relation of debtor and creditor remains*, and a debt still subsists, it is a mortgage; but if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the right of refusing it if he pleases, by a given time, and thereby entitle himself to a recoverance, it is conditional sale. See, also, *Slee vs. Manhattan Company*, 1 *Paige*, 56; *Goodman vs. Grierson*, 2 *Ball & B.*, 274; *Conway vs. Alexander*, 7 *Cranch*, 237.

Can the instrument from Clements and his daughter be considered a mortgage? or is it a conditional sale? and in what character does Porter stand to the several parties? Phillips, in his covenant, says he purchased of Clements and daughter four or five *servants*, for four hundred dollars, to them in hand paid; and if they neither die, run away, nor are stolen, and Clements and daughter pay him $500, within two years and six months, he will re-convey the servants to them. It will be observed that this covenant is worded with great caution. The property is delivered to Phillips, and he immediately sells four of them to Porter, for the same sum of four hundred dollars. We know nothing of the understanding between Porter and Phillips, other than from Porter's answer, who says, he promised Phillips he would re-sell them again to him, for five hundred dollars, at any time within two years. Porter was not present at, nor a party to, the sale from Clements and daughter to Phillips. Edwards, one of the

Porter, et al., *against* Clements.

witnesses, it is true, states that Phillips told Porter, he (P.) took in the same way as he had previously done; it shows no more than an understanding between the two latter, indefinite and uncertain in its character and terms; for the nature of the first contract was not explained, and Porter always insisted that he considered the sale absolute. There is certainly no parity of contract between Porter and Clements. It appears, from the testimony of Biscoe, the Sheriff, that Clements was embarrassed in his circumstances—that there were executions against him. The presumption is, the property had to be sold. He believed he could make a more favorable sale, and at a less sacrifice, with Phillips, than by permitting it to be sold at public vendue. It may have been a good bargain to Phillips, and no more; or the negroes may all have died; there was no liability resting on Clements or his daughter to pay in that event, nor were they bound to do so at any time, unless they thought proper. They could have told Phillips, you have had a good bargain; we are satisfied; or we have not the money, and therefore cannot buy; for there was no debt existing at the time between any of the parties. If Phillips had considered the transaction in the light of a mortgage, it is probable he would have so expressed himself, or taken a note to meet any loss he may have sustained by keeping them. He took no bond for repayment; he claimed no interest; he did not covenant to sell the increase; but only to re-convey them; that is to say, Tony, Fanny, Harriett, Violet, and Milley, provided he was paid $500, with a further proviso that they did not die, run away, or were stolen. Two of of the negroes, Fanny and Violet, have died. Harriett is still in possession of Clements; Tony was again re-purchased by Porter, at public sale, under a deed of trust executed by Clements, upon the contract with Phillips, and but one remains of the original purchase. Upon conclusion, we are clearly of opinion, that the covenant from Phillips to Clements, and his daughter Louisa, is personal between them, and cannot be considered a mortgage.

If the covenant was broken by Phillips, the parties have their remedy against his estate for damages; and that, although the period for re-purchase was two years and a half, yet so soon as Phillips, by selling the property, or any portion of it, to Porter or any other person,

placed it out of his power to comply with his covenants, it was broken, and an action for damages could have been sustained against him at law. The object of taking a mortgage is always to secure money loaned or due, and to compel a payment with interest. But here the object, on both sides, was a sale, and only a collateral right to re-purchase by a given day. They were under no obligation to make the purchase, nor were they responsible to either Phillips or Porter, if the parties were to do so. If all the slaves had died, Phillips must have sustained the loss; so Porter would have had no recourse upon any person, if they had all died in his possession. And as Clements and his daughter Caroline have a plain, complete, and adequate remedy at law against Phillips' representative for any damages they may have sustained by a breach of his covenant, a court of equity cannot have jurisdiction of it.

And this cause must be decided upon the ground of there being no equity upon the face of the bill, and no facts therein to authorize or sustain the final decree pronounced in the cause. We deem it unnecessary to notice the other errors assigned. Wherefore, upon the reasons above stated, it is the opinion of this Court that there is no equity in the bill of complaint, and that the Circuit Court, sitting as a Court of Chancery, erred in making the decree; and that it must, therefore, be reversed, annulled, and set aside, and the bill be dismissed without prejudice to the rights of either party.