## Johnson's ex'r *vs.* Clark.

An instrument to the following effect, to wit: "Received of E. J. $2950, in consideration of eight negro slaves, [naming them,] which I have this day sold and delivered to said E. J.;" with warranty of soundness and title; concluding thus, "The condition of the above obligation is such, that if I, B. C., my heirs, &c., shall within twelve months from date, pay to said E. J., his heirs, &c., the aforesaid sum of $2950, then the above deed of bargain and sale to be void in law, else to be and remain in full force and virtue," is not a mortgage, but a conditional sale.

Whenever a conveyance, assignment, or other instrument, transferring an estate, was originally intended between the parties as a security for money or any other incumbrance, whether the intention appears from the same or any other instrument, it is a mortgage.

A conditional sale, if clearly proven to be a *real* sale, and not a mere transaction to disguise a loan, will be held valid, though every transaction of this sort is viewed with jealousy.

Parol evidence is admissible to show that a deed absolute on its face, was intended as a mortgage. This principle is peculiar to mortgages and trusts.

It rests upon principles of policy and a sense of justice, and the extrinsic evidence is received, not to qualify or destroy the terms of the deed, but to establish the fact of *a loan.* This fact established, makes it a mortgage.

The construction is a question of intention: and to determine whether the instrument is a mortgage, the true question is, whether there is still a debt subsisting between the parties, capable of being enforced in any way, *in rem* or *in personam.* The test is, in other words, whether the instrument is a security for the payment of any money, or the performance or non-performance of any act or thing.

If the transaction resolves itself into a security, whatever be its form, it is in equity a mortgage. If not a security, it is a conditional sale or an absolute purchase.

The absence of a bond or covenant to repay the money will not make it the less a mortgage, if it is clearly established to be a security for a loan or the payment of a debt.

The line of discrimination between mortgages and conditional sales cannot be marked out by any general rule; but every case as to the true nature of the transaction and the intention of the parties, must be determined by its own circumstances.

The construction given to the instrument in this case is strongly sustained by evidence that the negroes were under execution; that the sum mentioned in it was more than the ordinary selling price; and that when executing it the parties called it a sale and purchase, and the purchaser complained that he had paid too much for them.

Nor is the instrument in this case in the ordinary form of mortgage; which ought, in the condition to specify the *debt* intended to be secured, and set it out at length. Though, still, the condition may be contained in a counter letter or separate paper, or exist in parol.

If this was not a conditional sale, the terms used should not have been so strong. Delivery accompanied the act; no separate security was taken for the money; no interest was stipulated to be paid; no reservation was made as to hire, increase, or death; and the instrument is called, even in the condition, *a bargain and sale.* This grantor had no remedy which he could enforce, to obtain payment of the money, *in personam* or *in rem.*

If the grantee in this case, had prevented the grantor from re-purchasing within the twelve months, he and his estate were liable in an action at law for damages; or, upon a case properly charged and made out, chancery would hold the grantee to stand in the situation of a trustee, and compel him to account for the use of the property, not from the time he advanced the money, but from the time of tender.

But where the bill for redemption charges the instrument to be a mortgage, and also that there was a subsequent new contract, and requires the defendant to answer as to both these points, it is competent for *both parties* to adduce evidence as to the character of the instrument and the existence of such new contract.

41

If the bill charges the transaction to have been *a loan*, and requires the defendant to answer to that charge, which the answer denies, and alleges it was *a sale*, the defendant may introduce evidence to sustain his answer. The complainant, by his own act, makes the bill evidence, and testimony to sustain it, competent.

THIS was a suit in chancery, heard in the Circuit Court of Hempstead county, in April, A. D. 1842, before the Hon. WILLIAM CONWAY B., one of the circuit judges. On the 21st day of June, A. D. 1834, Benjamin Clark executed the following instrument, under his seal: "Received of Edward Johnson, jr., two thousand nine hundred and fifty dollars, in consideration of eight negro slaves, to wit: Ned, Bob, Hannah, Phillis, Patts, Henry, Christopher, and Walker, which I have this day sold and delivered to the said Edward Johnson, and I hereby, for myself, my heirs, executors, and administrators, warrant the said negro slaves, to be sound of body and mind, and slaves for life; and I warrant and defend the title to the said slaves, to the said Edward Johnson, and his heirs, executors, and administrators, forever. The condition of the above obligation is such, that if I, Benjamin Clark, my heirs, executors, or administrators, shall well and truly, within twelve months from the date hereof, pay to the said Edward Johnson, jr., his heirs, executors, or administrators, the aforesaid sum of two thousand nine hundred and fifty dollars, then the above deed of bargain and sale, to be void in law, else to be and remain in full force and virtue." The negroes were delivered to Johnson at the date of the deed, where they remained until the determination of the suit.

On the 10th day of April, 1838, Clark filed his bill of redemption. He stated the money advanced him by Johnson, to have been a loan, and the instrument intended as a mortgage. That in the November following the execution of the deed, Clark, by his agent, tendered Johnson the amount due on the mortgage, which he refused to receive.

Johnson answered, denying that the money was a loan, and averring the transaction to have been a conditional sale: to prove which, he exhibited the instrument itself, and alleged that there was no condition other than was expressed in the deed. He denied that Clark ever offered to re-purchase or redeem the negroes, and averred that the person who made the alleged tender was not authorized by Clark, nor even made a legal tender; that he acted as a mere volunteer,

and for the purpose of getting the negroes, and then taking a mortgage from Clark to himself; and that the tender was in paper money, and not the funds of Clark. He also stated that sometime in 1834, he agreed to give Clark $250 for any right he might have to re-purchase or redeem the negroes, and that in June, 1835, he paid that sum to Clark's wife for that purpose.

The suit afterwards proceeded against William Trimble, as executor of Johnson, who filed an amended answer, alleging that Clark never executed any bond, bill, note, or other instrument of writing, or made any contract to, or with, Johnson, acknowledging the money received to be a debt or loan, nor was there any agreement that it was a debt or loan. General replications were filed to each answer.

Several depositions were taken in the cause, and on the hearing in October, 1841, they were read, subject by consent, to certain exceptions and objections to them, taken by the complainant.

The complainant proved by two witnesses, the tender, by his agent, as alleged in the bill; that the money tendered was paper money, but good current money, to which Johnson did not object, but refused to receive it, because part of it was the agent's own money, who was to retain part of the negroes until he was paid. One of the complainant's witnesses also proved, that Johnson had proposed to purchase the residue of Clark's interest in the negroes, that Clark had said that if he would give him as much as any body else would, he should have them, and that Johnson, at one time, gave Mrs. Clark between two and three hundred dollars on account of some promise he had made Clark in regard to the negroes.

The defendant proved that the money advanced by Johnson was spoken of at the time, as the *price* agreed on for the negroes, each being priced separately, and that nothing was said about a loan when the deed was made, but it was spoken of between the parties, as a sale and purchase. That the prices given were as much as the negroes were worth; that Clark was much in debt, supposed to be insolvent, and the money went to pay executions against him.

The complainant excepted to the depositions on several grounds—principally, that parol evidence was inadmissible to explain or contradict the deed, and that the questions were leading.

In May, 1841, the court, supposing the cause not to be fully at issue, after it had been heard and argued, continued the cause, with leave to the complainant to file an amended or supplemental bill in reference to the purchase of the equity of redemption, and the defendant to answer, and that further testimony might be taken, and a cross bill and amended replication filed.

In October, 1841, however, the cause being found to have been fully at issue, it was heard, and the court decreed that Clark should be allowed to redeem, and directed the master to take an account, charging interest against Clark on the mortgage money, at the rate of ten per centum per annum, and crediting him with the hire and profits, deducting the expenses of the negroes, and making annual rests. At April term, 1842, the master reported the sum of $1002 27 cents, still due, having allowed hire at credit prices, and deducted the hire for each year at the end thereof; and the decree was made final, allowing Clark to redeem on payment of the sum found due, and adjudging the costs against him. The defendant appealed.

*Trimble & Fowler*, for appellant. The contract is a conditional sale, or sale with a right reserved to re-purchase within a definite period, and not a mortgage. See 4 *Kent Com.* 142; 2 *Pet. Con'd Rep.* 480; *Conway's ex'r and devisees vs. Alexander*, 3 *J. J. Marsh. Rep.* 355; *Porter vs. Clemens*, 3 *Ark. Rep.* 364; 2 *Story's Eq.* 285, 288; *Flagg vs. Mann*, 2 *Sumner C. C. Rep.* 530; *Chapman vs. Turner*, 1 *Call Rep.* 280; 5 *Mass. Rep.* 109; 2 *Mass. Rep.* 493, et seq.; 8 *Mass. Rep.* 159; 1 *Ves. sr.* 402; *Longuit vs. O'Conner*, ·Sug. on Vendors, 179; 2 *Sch. & Lef. Rep.* 393, note a. 395; 19 *Ves.* 412; 4 *John. Rep.* 187; 1 *Marsh.* 170; *Com. Dig.* 699; *Newl. on Cont.* 152; 2 *Ball & Beat.* 139; *Harrison vs. Lee*, 1 *Littell Rep.* 193; 5 *Litt. Rep.* 86; *Oldham vs. Halley*, 2 *J. J. Marsh.* 113; *Myrick's heirs vs. Boyd, et al.*, 3 *Hayw. Rep.* 179; 2 *Yerg. Rep.* 6; *Bennett vs. Holt*, 3 *Yerg. Rep.* 513; *Overton vs. Bigelow*, 1 *Paige Rep.* 56.

Clark does not specifically allege in his bill a tender of the money within the time specified in the contract, but attempts to save himself by setting up a new contract, or special tender agreed to by John-son, and then rejected; which is positively denied in the answer and

unsustained by proof. The answer standing uncontradicted by evidence, disproves both a general and special tender, as well as the new contract, consequently no decree could be rendered against it on that point. The allegations and proof must correspond, and "a fact alleged but not proved, cannot be the foundation of a decree." 1 *Bibb Rep.* 175, 316, 242. 2 *Bibb Rep.* 7, 26, 384. 2 *Story Eq. Pl.* 214. 1 *J. J. Marsh. Rep.* 351. 3 *Litt. Rep.* 339. 3 *Monroe Rep.* 50, 225. 10 *Wheat. Rep.* 89. 6 *Monroe Rep.* 22. 4 *Monroe Rep.* 174. 4 *Litt. Rep.* 261.

Clark, for a valuable consideration, sold his right to re-purchase or redeem to Johnson; therefore, whether the deed be a mortgage or conditional sale, he is entitled to no relief, either at law or in equity.

Appellee can take no benefit in this court from his exceptions to appellant's depositions in the court below; because this court will consider them as waived, unless the record had shown that they were insisted upon and decided by that court. 5 *Monroe Rep.* 164, *et seq.* Because the depositions are unexceptionable, and because, even were they stricken from the case entirely, a decree must be rendered in favor of the appellant upon the answer alone.

Clark having alleged in his bill, and specially interrogated Johnson as to the nature of the contract, whether a sale or a mortgage; whether Johnson had advanced the money as a loan, and the sale and delivery was made to him as a security for its re-payment; whether Clark had not made a tender within the time specified, general or special; and upon every other allegation claiming any merits upon which to base a decree in his favor; and Johnson having positively denied them all, severally, and his answer being strictly consistent with the written contract, and all the evidence corroborating the answer, there is no ground left for Clark's decree to rest upon. The answer in such case, even without the corroborating circumstances and evidence, must prevail and be taken as conclusive against Clark's pretended equity. An answer responding to, and denying the allegations of the bill, as to matters within defendant's knowledge, must be taken as true, unless disproved by two witnesses, or one, and strong corroborating circumstances. See 1 *Cooke Rep.* 110; 4 *Con'd Rep.* 311; 3 *Wheat. Rep.* 520; 2 *Con'd Rep.* 293; *and in notes.* 1 *Cow.*

*Rep.* 743; *Woodcock vs. Bennett, Gilb. Law of Ev.* 45; 1 *Vern. Rep.* 136, 208; 3 *Monroe Rep.* 225; *Hawkins vs. Embry,* 3 *Hayw. Rep.* 19; *Blair & Co. vs. Brabsom,* 4 *Mon. Rep.* 174; *Whittington & Co. vs. Roberts,* 5 *Con'd Rep.* 136; *Hughes vs. Blake,* 6 *Wheat. Rep.* 453; 10 *John Rep.* 540; *Clason vs. Morris, Hardin's Rep.* 537; *Bright's heirs vs. Haggin,* 3 *Chan. Cas.* 123; 1 *Harr. Ch. Pr.* 305; 1 *Litt. Rep.* 41; and every book upon the subject. 1 *Call. Rep.* 280, *Chapman vs. Turner;* 2 *J. J. Marsh.* 115; 7 *Cr. Rep.* 69; 9 *Cr. Rep.* 153; 1 *Wash. C. C. Rep.* 230, *Higbee vs. Hopkins;* 1 *Paige Rep.* 242, *Stafford vs. Bryan.*

The evidence of tender, even were it sufficient in other respects, is wholly defective and insufficient in this, that the witness' statement of *time* is indefinite, and given only on supposition, and is also the amount tendered. Where a witness states that the facts stated in his deposition are to the *best of his knowledge and belief,* without mentioning whence his knowledge is derived, or his belief induced, this is no evidence at all. 10 *John. Rep.* 531, *Clason vs. Morris.*

In equity, the intention of the parties at the time, is the main criterion by which the nature of the contract—whether a mortgage or defeasible sale—must be determined. And this is conclusively established in favor of the appellant. 2 *Con'd Rep.* 480, *Conway's ex'r vs. Alexander;* 1 *Eq. Cas. Abr.* 310, 311, *et seq.;* 3 *Ark. Rep.* 364, *Porter vs. Clemens;* 1 *Call* 280; 2 *Yerg. Rep.* 8, *Bennett vs. Holt;* 3 *Yerg. Rep.* 519, *Overton vs. Bigelow;* 3 *J. J. Marsh. Rep:* 355, *Edrington & Co. vs. Harper;* 1 *Litt. Rep.* 192, *Harrison vs. Lee;* 1 *J. J. Marsh.* 342; 2 *J. J. Marsh.* 114; 1 *Marshall* 178; 2 *Mass. Rep.* 497, *Erskine vs. Townsend;* 2 *Cowen Rep.* 331, *Clark vs. Henry.*

Where the words of the contract show a sale and a fixed price, it evinces that a sale and not a mortgage was the intention, and excludes judicial interference for redemption. 1 *Call Rep.* 286, *Chapman vs. Turner;* 2 *Yerg. Rep.* 8, *Bennett vs. Holt.*

A mortgage is always founded on a loan or debt, and is a security for the re-payment of the money. 1 *Call Rep.* 286; 3 *Hayw. Rep.* 181; 2 *Yerg. Rep.* 8; 3 *Yerg. Rep.* 517; 3 *J. J. Marsh. Rep.* 355.

A defeasible sale is where no debt is due, and the property in the mean time belongs to the vendee. 3 *Hayw. Rep.* 181; 2 *Yerg. Rep.* 8.

In this case, Johnson had no remedy against Clark, for a recovery of the amount paid, &c. The remedy must be mutual, or equity will not interfere. 2 *Con'd Rep.* 480, *Conway's ex'r &c. vs. Alexander;* 7 *Monroe's Rep.* 423, *Butts vs. Boudenant;* 1 *Litt. Rep.* 193, *Harrison vs. Lee.*

*Trapnall & Cocke, Pike & Baldwin,* contra. The instrument in this case was in form a mortgage according to the strict technical definition of that word. It created an estate upon a condition defeasible upon the performance of the condition, according to its legal effect. *Erskine vs. Townsend,* 2 *Mass.* 493.

A mortgage is elsewhere defined to be, a conditional conveyance of land, designed as security for the payment of money, or performance of some other act, and to be void upon such payment, or performance. 1 *Hilliard,* 266. 1 *Powell,* 1, 2, 3, 4, 5.

A mortgage may be made by an absolute deed, and a defeasance both; instead of a single conditional deed. *Hilliard,* 267. *Bodwell vs. Webster,* 13 *Pick.* 411. *Colwell vs. Woods,* 3 *Watts,* 188.

As to what constitutes a mortgage, there is no difficulty. The particular form, or words, of the conveyance, are unimportant, and it is a general rule, subject to few exceptions, that wherever a conveyance, assignment, or other instrument, transferring an estate, is originally intended between the parties, as a security for money, or for any other incumbrance, whether this intention appears from the same or any other instrument, it is always considered as a mortgage, and consequently redeemable. 2 *Story's Eq.* 287. 4 *Kent,* 142. 2 *Fondb. B.* 3, *ch.* 1, § 4, and *note e. Id.* § 5, *note h.*

So inseparable is the equity of redemption, that it cannot be disannexed, even by an express agreement of the parties. 2 *Story Eq.* 287. *Newcomb vs. Benham,* 1 *Vern.* 232. *Seton vs. Slade,* 7 *Ves.* 273. *Holdridge vs. Gillespie,* 2 *J. C. R.* 33.

The equity of redemption exists in mortgages of personal as well as of real estate. 2 *Story Eq.* 297. *Kemp vs. Westbrook,* 1 *Ves.* 273. *Hart vs. Ten Eyck,* 2 *J. C. R.* 100. *Harrison vs. Hart, Co. R.* 392, 44.

A mortgage, in form, purports to convey a *present estate* to the mortgagee, liable to be defeated by the performance of the condition

*Johnson's ex'r vs. Clark.*

named: but the modern doctrine is, that the mortgagor as well at law, as in equity, remains the owner of the land. 1 *Hilliard*, 296. 2 *Hilliard*, 319.

A conditional sale is an absolute sale, with an agreement to permit a re-purchase. This is the distinction between it and a mortgage. 1 *Hilliard* 271. *Davis vs. Thomas*, 1 *Russ. & Mylne*, 506.

In regard to the absence of a covenant to repay, or bond, or other collateral evidence of debt, the rule is now settled, that nothing of the kind is now necessary to constitute a mortgage, or to make the grantor liable for the money. Nor would it be the less a mortgage, because the mortgagee chose to rely on the property alone for his security—deeming it an adequate fund. The true test is, whether there is a debt subsisting, capable of being enforced, either *in rem* or *in personam*. Nor does it make any difference, that the property has been placed in the hands of the mortgagee. The fact that there is no such covenant or obligation, is of no importance at all, where the instrument is in form a mortgage, but only where it is in form a conditional sale, that is, an absolute sale, with a covenant to reconvey. *Floyer vs. Lavington*, 1 *P. Wil.* 270. *Howell vs. Price*, *ib.* 294. *King vs. King & Ennis*, 3 *P. Wil.* 359. *Cope vs. Cope*, 2 *Salk.* 449. *Balsh vs. Hyman*, 2 *P. Wil.* 455. *Manlove vs. Bale & Bruton*, 2 *Vern.* 84. *Belvedere vs. Rockfort*, 6 *Bro. P. C.* 520. *Phillips vs. Phillips*, 2 *Bro. C. R.* 273. *Mellor vs. Lees*, 2 *Atk.* 496. *Goodman vs. Grierson*, 2 *Ball & Beat.* 278. *Flagg vs. Mann*, 2 *Sumn.* 533. *Brown vs. Bement & Strong*, 8 *J. R.* 96. *Clark vs. Henry*, 2 *Cowen* 324. *Slee vs. Manhattan Co.* 1 *Paige* 48. *Edrington vs. Harper*, 3 *J. J. Marsh.* 356. *Dougherty vs. McColgin*, 6 *Gill & John.* 275. *Glover vs. Payn*, 19 *Wend.* 518. *Conway's ex'r vs. Alexander*, 7 *Cranch* 218. *Rice vs. Rice*, 4 *Pick.* 349. *Newhall vs. Bent*, 7 *Pick.* 157. *Wilcox vs. Morris*, 1 *Murph.* 117. *Wharf vs. Howell*, 5 *Binn.* 499. *Eaton vs. Green*, 12 *Pick.* 526. *Kent vs. Aubritain*, 4 *Howard* 317.

To say that there is no remedy for the recovery of the money, is a mere begging of the question, for if the instrument is a mortgage, there is a remedy. *Wharf vs. Howell*, 5 *Binn.* 503. *Wheeland vs. Swartz*, 1 *Yeates* 583.

Johnson's ex'r *vs.* Clark.

The innovation upon the general rule of evidence, that no parol evidence is admissible to contradict or vary the legal effect of a deed, by which it is allowable to show an absolute deed to have been intended as a mortgage, is made *in favorem debitoris* exclusively. No such evidence is admissible in favor of the creditor, to show that an instrument in form a mortgage, was intended to be a conditional sale. *Flagg vs. Mann, ub sup.; Ring vs. Franklin,* 2 *Hall,* 1, 13; *Walker vs. Walker,* 2 *Atk.* 98; *Vernon vs. Bethell,* 2 *Eden,* 110; *Marks vs. Pell,* 1 *J. C. R.* 594; *Taylor vs. Luther,* 2 *Sumn.* 232; *Clark vs. Henry,* 2 *Cowen* 324; *Slee vs. Manhattan Co.,* 1 *Paige* 48; *Roach vs. Cosine,* 9 *Wend.* 227; *Reading vs. Weston,* 8 *Conn.* 120; *Walton vs. Craily,* 19 *Wend.* 63; *Murphy vs. Trigg,* 1 *Mon.* 73; *Washburn vs. Merrily,* 1 *Day* 139; *James vs. Mory,* 2 *Cowen* 247; *Gilchrist vs. Cunningham,* 8 *Wend.* 641; *Champlin vs. Butler,* 18 *J. R.* 173; *Strong vs. Stewart,* 4 *J. C. R.* 167; *James vs. Johnson & Mory,* 6 *J. C. R.* 417; *Skinner vs. Miller,* 5 *Litt.* 85; *Reed vs. Lansdale, Hardin* 6; *Secrest vs. Turner,* 2 *J. J. Marsh.* 471; *Van Buren vs. Olmstead,* 5 *Paige* 9.

The simple question is, would the court, looking at the face of the instrument alone, hold it to be a mortgage? If so, the whole matter is decided.

The mortgagee of negroes is liable for the hire, an allowance for raising being deducted, and the hire is properly applied in annual rests to keep down the interest, and also to extinguish the principal. An agreement that the hire should simply off-set the interest, would have been usurious. *Robertson vs. Campbell,* 2 *Call* 421. *Fenwick vs. Macy's ex'r,* 1 *Dana* 286. *Saunders vs. Frost,* 5 *Pick* 260. *Walcott vs. Sullivan,* 1 *Edw.* 399. *Bainbridge vs. Owen,* 2 *J. J Marsh.* 465. *Reed vs. Lansdale, Hardin* 7. *Bennington vs. Harwood, Tur. & Russ.* 477. *Wilson vs. Metcalfe,* 1 *Russ.* 530. *Whittick vs. Kane,* 1 *Paige* 202. *Wilkins vs. Sears,* 4 *Mon.* 348. *Field vs. Beebe,* 3 *Bibb* 18. *Van Buren vs. Olmstead,* 5 *Paige* 9. *Gould vs. Tancred,* 2 *Atk.* 538. 6 *Mon.* 122. *Ballinger vs. Worley,* 1 *Bibb* 195. *Davenport vs. Tarlton,* 1 *Marsh.* 244. *Wilkin's ex'rs vs. Sears,* 4 *Mon.* 347. *Morris vs. Morris,* 3 *J. J. Marsh.* 108. *Gordon vs. Lewis,* 2 *Sumner* 147.

*Sheppard vs. Elliott*, 4 *Madd.* 251. *Gibson vs. Crehore*, 5 *Pick.* 160. *Saunders vs. Frost*, 5 *Pick.* 259. *Reed vs. Reed*, 10 *Pick.* 398.

*By the Court*, PASCHAL, J. [*At January Term*, 1843:] This is a suit in chancery, instituted on the chancery side of the circuit court of Hempstead county. A decree was rendered in favor of the complainant, and an appeal has been presented to this court for a reversal of that decree. We deem it necessary to give the history of the case with some minuteness.

Clark alleges in his bill, that about the 14th of June, A. D. 1834, he obtained from Johnson, the loan of about $2600, to be paid in twelve months; that he gave as security a mortgage to eight negro slaves therein named. This writing is referred to in Johnson's answer. [The reader will find it set out in the preceding statement.]

After averring an increse in one of the negroes, after the delivery to Johnson of all the negroes, the bill alleges that the negroes were redeemable in twelve months, and that, at the time of the arrangement, the negroes were under execution. The bill then positively charges, that the advancement of money was a *loan*, and that the transfer of the negroes was as a security to guaranty the re-payment of the money; that he had a right to redeem, &c. The bill then charges that, in 1834, one Jo. Stewart called on Johnson to redeem the negroes for complainant; that Johnson consented to take, in part payment of said debt thereof, the negroes at such price as he should fix; that he fixed a price; that Stewart tendered him the balance of the money "borrowed as aforesaid," which Johnson counted out; that all this was done at a day and place appointed by Johnson; that Johnson counted the money, then rejected the tender; that he has kept the negroes, and had the use and benefit of them ever since; that the hire and service of the negroes has amounted to as much as the whole original sum borrowed, and that the debt is therefore fully satisfied; and that, also, Johnson once offered and fixed a day to return the negroes; he has refused, &c. The complainant offers to discharge the debt. The bill calls for estimate of hire, and offers balance, if any; calls on Johnson to exhibit the deed, &c. The bill was exhibited in April, 1838.

Johnson, in his answer, admits that in June, 1834, Clark received of him the sum of $2950, in consideration for the eight slaves which were then conveyed to him. He positively denies that the money advanced was a loan, but that the same was received in full consideration, as a sale and delivery. For greater certainty, he sets forth the instrument; he contends that the condition was but a privilege to Clark to re-purchase, but the defendant refers to the sale and condition to correct any mis-apprehension of his, as to the tenor of the deed. The defendant contends, that the deed is not a mortgage, but an absolute sale, without condition other than a privilege to Clark to re-purchase within twelve months, and that no equity of redemption was reserved; that the purchase was made in June, 1834, and that, at that time the negroes were not worth more than the sum paid; that this sum was in fact their full value. He admits an increase of one child; he denies that Clark ever tendered him his money, or that he ever prevented him from re-purchasing; denies that he ever offered to take part of the negroes in part payment; denies that the money advanced was a debt from Clark to him, but only a sum agreed upon for a re-purchase; reiterates that it was not a loan but a sale; that the deed was not a security or guaranty, but a deed of sale; denies Stewart's authority from Clark to redeem the negroes; that he acted as a volunteer; that whatever money he, Stewart, offered, was paper, and that Stewart's object was to acquire a mortgage from Clark and possession of the negroes in himself; that sometime in 1834, he made a verbal agreement with Clark to pay him $250 for any right of redeeming the negroes which Clark might have, and that, in June, 1835, the defendant paid Hulda Clark, the wife of the complainant, the said $250, in full extinguishment of the right of redemption or re-purchase. He admits the continued possession, estimates the value at the usual hiring, at $2100; denies that he had yet prevented Clark from re-purchasing; but denies any right to do so after the expiration of twelve months from the date of the deed.

At the May term, 1839, the death of Johnson was made to appear, and the suit was revived in the name of Trimble and Lucretia Johnson, his executors. The suit was afterwards abated as to the widow by her marriage, and progressed in the name of Trimble alone.

Trimble afterwards files an amended answer, in which he denies the loan, and insists that no bond, note, or bill, was given by Clark to Johnson for the re-payment, &c.

Clark filed a general replication to Johnson's answer, and moved to strike out the answer of Trimble. This motion seems never to have been disposed of—a replication to the amended answer was afterwards filed. A number of depositions are copied into the record. There are also numerous exceptions filed to the depositions, the consideration of which was reserved until the final hearing. The cause seems never to have been set for final hearing. The cause seems to have been submitted for hearing in April, 1841, and taken under advisement, the court, not being sufficiently advised what decree to render; and at an adjourned term thereafter, the cause was continued with leave to the complainant to file a supplemental bill in reference to the purchase of the equity of redemption, and that the defendant have leave to answer thereto; that the parties have leave to take farther testimony in support of the supplemental bill and amended answer; that the defendant have leave to file a cross bill, and the complainant, a replication, &c. Neither party ever acted on this order. At the next term the Chancellor entered his decree, that the instrument was a mortgage, allowed Johnson ten per cent. interest; directed the master to take an account of hire and expenses—to calculate costs—to strike a balance, and finally, that the defendant, Trimble, re-convey.

Now, it is to be observed, that the negroes passed into the possession of Johnson, in June, 1834. They remained in his undisturbed possession until the exhibiting of complainant's bill, in April, 1838. The deed was also in Johnson's possession. The property at the time being personal, so far as to pass by delivery, Clark could not have recovered it at law. He then exhibits, very properly, his bill, in which he charges that although the possession is in Johnson; that he only holds them as a mortgage, having taken them as a security for money advanced to him, Clark. He does not state that the money borrowed was to draw interest, nor does he distinctly charge that the profits or hire of the property was to go to extinguish the principal debt. It is true that in a part of his bill, he does charge that the

annual hire and services of said negroes have, upon a fair estimate, amounted to as much as the whole original sum so borrowed as aforesaid, if not more, and said original debt is thereby extinguished. Here the complainant makes no offer to satisfy interest. He does not allege, that he is held to pay any; in other words, he does not offer to do equity, when coming into chancery to ask it. At the same time, he had a right on his allegations to demand a discovery, and having once brought himself within the equity jurisdiction, the court would, if convinced of the justice of his cause, render the correct decree upon the general prayer for relief. These remarks are only to show that the complainant is not himself very distinct in charging the equities of his borrowing.

The defendant, on the other hand, distinctly denies that there ever was a borrowing; that either party ever understood it as such; that the negroes ever were transferred as a security for money; but, on the other hand, he positively responds that the negroes were absolutely sold and delivered, and that he was subject to no other condition than the obligation to allow Clark to re-purchase them within twelve months and, that failing to re-purchase within the twelve months, his right to do so was forever barred; he farther sets up new matter to the effect that, if Clark ever had any right to re-purchase, he had extinguished that right, upon the payment of $250, as a full consideration of any right which Clark might have to re-purchase.

The response of Johnson, so far as relates to the understanding of the parties, is well sustained by the depositions of witnesses, read at the hearing. Moss, one of the subscribing witnesses, at first, calls the instrument a mortgage; but he afterwards says, that at the time of signing it, he did not know what it was; he does not know whether it was a mortgage or sale, or whether the money advanced was a loan or purchase. In fact, he proves nothing except the execution of the instrument in question. But Myrick, the other subscribing witness, not only proves the execution, but proves the payment of $2651 57½ cents of the money, and states that the money was the price agreed on for the negroes, that $700 was agreed to be paid for the fellows, and that $2900 was the full value of the whole number; that the contract was not made in his presence; that when they

came into his counting-room and Clark signed it, Johnson said the price was high; that he was to pay $700 each, for Bob and Ned; that Clark was embarrassed—some thought him insolvent, and the money went to pay the executions against him; that witness himself paid $2651 59 cents to the sheriff, under the instruction of the parties.

In support of the bill, the evidence of Stewart was offered. He states that "some short time before the mortgage expired, agreeable to previous arrangement, I went to Samuel Hopsons, for the purpose of redeeming the negroes, mortgaged to Edward Johnson by Benjamin Clark. I counted out the full amount of money that was mentioned in said mortgage; said Johnson took it and recounted it. Johnson then asked me if it was Clark's money or mine? I believe that I answered him, that a part of it was Clark's and a part mine; that I was redeeming them for Clark's benefit; I further told him that I was to have a part of the negroes, and that I was to retain a part until Clark paid me back my money; Johnson observed, that if it was for my benefit, that he could do as well for Clark as any other man, and that I should not redeem them, and handed me the money back;" that the amount of money was $2950; that he had been spoken to, sometime before by Clark to redeem the negroes for him. This was in the summer of 1835. The witness, sometime after that, went with Mrs. Clark, to redeem Phillis and family. Johnson declined doing any thing more with the negroes until Clark got home, but paid Mrs. Clark, between two and three hundred dollars, for which she gave him a receipt; that Clark had told witness that Johnson would do better than the mortgage called for, and witness supposed this was the additional sum promised. On cross examination, witness stated that, at the time of the tender of the 2950 dollars to Johnson, he showed no written authority from Clark; that he had no written authority; that the money was on solvent banks; that Johnson made no objection to the money not being gold or silver coin. The rest of his evidence is only of a negative character.

Hopson, a witness, states that Stewart and Johnson came to his house in the winter "four years before Sept., 1839;" that Stewart counted out some money to Johnson; Johnson handled it, and then declined taking it, and went off home; that some time before that

time, the witness went with Clark to Johnson, and offered to redeem all the negroes except one negro man, with money enough to redeem all but said negro man, and Johnson refused to take it. Johnson took Clark out and had some conversation, and Clark and himself then left. Gibson, the sheriff, was offered as a witness for defendant: his evidence goes to show that the negroes were priced by himself and Johnson, but not in Clark's presence; that the parties treated it as a purchase; that it was spoken of in the room as such; that they did not exchange exact words to that effect, but such was clearly his understanding; that $2950 was the full value of the negroes; that he saw not the written contract, but from Clark's order to him to deliver the negroes to Johnson, and from every circumstance, he supposed the transaction to be a purchase.

This is the whole case, both as presented by the pleadings and by the parol evidence.

The most important question is to determine the character of the instrument itself. Was it a mortgage or a conditional sale—a sale which authorized Clark to re-purchase within one year, by repaying the amount of the purchase money? Was this a privilege, which, if not punctually exercised, was lost after the expiration of a year? and is there evidence that this right to re-purchase was relinquished for a valuable re-consideration? If the instrument was a conditional sale, giving to Clark the right to re-purchase, has he raised an equity against Johnson, by proving a lawful tender of the money, and any act on his part refusing to allow the re-purchase?

These are questions not without their difficulty, and can only be determined by an application of this cause to original principles, and to cases of an analogous character. "A mortgage is the conveyance of an estate by way of pledge for the security of a debt, and to become void on the payment of it. The legal ownership is vested in the creditor, but in equity the mortgagor remains the actual owner, until he is debarred by his own default or by judicial decree." 4 *Kent's Com.* 135. "The particular form of words of the conveyance are unimportant, and it may be laid down as a general rule, subject to few exceptions, that whenever a conveyance, assignment, or other instrument transferring an estate, was originally intended between the

parties, as a security for money, or any other incumbrance, whether the intention appears from the same or any other instrument, it is always considered as a mortgage, and consequently, redeemable upon the performance of the conditions or stipulations thereof." 2 *Story's Com.* 287. 2 *Fondb. Eq.*, *B.* 3, *ch.* 1, *and note.*

The English law of mortgages appears to have been borrowed, in a great degree, from the civil law, and the Roman *hypotheca,* corresponds very closely with the description of a mortgage in our law. 4 *Kent's Com. p.* 136; 2 *Story's Com. on Eq. p.* 270 *to* 278, *ch.* 28. Mr. BUTLER is of opinion, that mortgages were introduced more on the model of the Roman *pignus* or *hypotheca,* than upon the common law doctrine of conditions. But Chancellor KENT rejects this doctrine, and insists that the English law of mortgages, taken in its most comprehensive sense, was essentially borrowed from the civil law. See 4 *Kent's Com. part* 6, *sec.* 58, *p.* 136, *note a.* In the Roman law, there were two sorts of transfers of property as security of debts, viz: the *pignus* and the *hypotheca.* The pignus or pledge was when any thing was pledged as security for money lent, and the possession was passed to the creditor, upon the condition of returning it to the owner, when the debt was paid. The hypotheca was when the thing pledged was not delivered to the creditor, but remained in possession of the debtor. *Bac. Abr. Mortgage A.* 2 *Story's Com. on Eq.* 272. There were, however, some important distinctions between real and personal estate, at common law, as to remedies at common law, which it is unnecessary to notice in this place. A distinction is also made between a conditional sale and a mortgage. The former, if clearly proven to be a real sale, and not a mere transaction to disguise a loan, will be held valid, though every transaction of this sort is viewed with jealousy. 2 *Story's Com.* 288. This is also in accordance with the civil law. 1 *Domat B.* 3, *title* 1, *sec.* 3, *Art.* 11. *Digest, Liber* 20, *title* 1, *ch.* 16, *sec.* 9.

In equity, the character of the conveyance is determined by the clear and certain intention of the parties. A deed, absolute on the face of it, and registered as such, will be valid and effectual as a mortgage between the parties, if it were intended by them to be merely a security for a debt, and this would be the case, though the

Johnson's ex'r *vs.* Clark.

defeazance or the agreement rested in parol. Parol evidence is admissible to show that a deed was intended as a mortgage, and that the defeazance has been omitted. 1 *Kent*, 143. This principle is peculiar to mortgages and trusts, and so courts of law and equity hold it. It is an elementary principle, applicable to these estates, recognized and affirmed by the common law, civil law, and equity jurisprudence. It rests upon the principle of policy and a sense of justice, and the extrinsic evidence is received, not to qualify or destroy the terms of the deed, but to establish the fact of a loan; and this fact being established, makes the deed, which would otherwise have been absolute, a defeasible conveyance. *Ring et al. vs. Franklin,* 1 *Hale Rep.* In *Flagg vs. Mann,* 1 *Sumner* 530, Justice STORY aptly remarks, that courts of equity do not regard the forms of instruments, but that they look to the intent, and give to the acts of the parties that construction which that intention justifies and requires." And at page 534, he remarks, "The true question is, whether there is still a debt subsisting between the parties, capable of being enforced in any way, *in rem* or *in personam.* See *Floger vs. Lavington,* 1 *P. Will. Rep.* 270, 271. *Lougent vs. Scarvon,* 1 *Ves. Rep.* 406. And at page 533 he remarks, "It was argued at the bar that the test whether it be a mortgage or not, is to ascertain whether it was a security for the payment of any money or not." Judge STORY: "I agree to that; and indeed in all cases the true test is to ascertain whether the conveyance is a security for the performance or non-performance of any act or thing. If the transaction resolved itself into a security, whatever be its form, it is in equity a mortgage. If it be not a security, then it is a conditional, or an absolute purchase. The case of an absolute sale with an agreement for a re-purchase within a given time, is totally distinct, and not applicable to mortgages. Such defeasible purchases, though narrowly watched, are valid, and to be taken strictly as independent dealings between the parties, and the time limited for a re-purchase must be precisely observed, or the vendor's right to reclaim his property will be lost forever. 4 *Kent*, 144.

A mortgage is almost universally accompanied with a bond for a debt intended to be secured. The absence of a bond or a covenant to repay the money, would not make it the less a mortgage, if it was

clearly established to be such, or a loan or security for the payment of a debt. 4 *Kent Com.* 144.

The true question in all cases, no matter what may be the form of the conveyance, seems to be to determine whether there was a loan or borrowing, or intention to secure a debt on the one part, and a lending and taking mortgage or trust security on the other. Thus in the case of *Conway's ex'rs and devisees vs. Alexander*, 7 *Cranch* 289; 2 *Con'd Rep.* 482. A. advanced money to B., and B. thereupon conveyed lands to trustees to execute to A. in fee, should B. fail to repay the money and interest upon a given day. B. failed to repay the money, and the trustees conveyed: Held by the court, that B. had no equity of redemption. Chief Justice MARSHALL, in delivering the opinion of the court, remarks: "The question to be decided is, whether Robert Alexander, by his deed of March, 1788, made a conditional sale of the property conveyed by that deed to trustees, which sale became absolute by the non-payment of seven hundred pounds with interest, on the 1st of July, 1790, and by the conveyance of the 19th of that month; or is to be considered as having only mortgaged the property so conveyed." To deny the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands, defeasible by the payment of money at a future day; or in other words, to make a sale with a reservation to the vendor of a right to purchase the same land at a fixed price and at a time specified, would be to transfer to the court of chancery in a considerable degree, the guardianship of adults, as well as infants. Such contracts are certainly not prohibited by the letter or policy of the law. But the policy of the law does prohibit the conversion of a real mortgage into a sale. "But as a conditional sale, if really intended, is valid, the inquiry in every case must be, whether the contract in the specified case, is a security for the re-payment of money, or an actual sale." This is also the precise doctrine laid down, if possible, in stronger terms, in the case of *Huntington vs. Harper*, 5 *J. J. Marshall, Ky. Rep.* 354.

Chief Justice MARSHALL, after the fullest review of the above cause of *Conway*, both from the deed itself as well as the extrinsic evidence, decides that the grantor had no equity of redemption; in other words,

that although a third person was a trustee, the deed was a conditional sale.

In the case of *Chapman vs. Turner*, 1 *Call Va. Rep.* 281, the instrument in question, was as follows: "I have this day received from John Turner the sum of £30, and put a negro woman, named Hannah, in his hands as security, and if thirty pounds is not paid at or before the next July Hanover court, the said Turner is to have the negro for the said £30." Chapman prosecuted a bill in chancery, charging that the instrument in question was a mortgage. Turner denied, and insisted that it was a conditional sale. The judges were unanimous that it was a conditional sale. The reasoning was the same as that used by Judge Marshall, in the case of Conway, above cited. They lay down the doctrine, that the line of discrimination between mortgages and conditional sales cannot be marked out by any general rule, but that every case, as to the true nature of the transaction and the intention of the parties, must be determined by its own circumstances. They add, "In defeasible purchases, the condition must be strictly performed at the day, or no relief will be granted; because it does not admit of compensation for the risk. If the thing perish the next day, it must be the loss of the purchaser, he having no covenant or implied promise for the return of the money in that event. We are taught by the maxims in equity, that in these casual cases, eventual loss or gain must accrue to, or fall upon him who runs the risk." Equity allows the redemption upon the ground that there being a security for the debt, no price for parting with it is contemplated; and as the thing pledged or mortgaged is of more value than the debt, it would be unjust that the mortgagor should lose the property, from his inability to pay upon a particular day. If that were the case, the creditor would receive his debt and interest, for both being secured by the mortgage, and of course he would run no risk of either loss or injury, which would be as unconscionable as it would be unjust. The reason for holding vendors to strictness in conditional sales, applies with peculiar force and weight where slaves are the subject of contract in this country. They are regarded by the law as perishable property, and may die the next day after the purchase. If they should not, their labor may become

profitable, and their value greatly enhanced by their increase. Now would it be just or proper, for a vendor to lie by until their labor or increase had greatly exceeded the principal and interest of the money agreed to be paid, and then be allowed to come into a court of equity, and to redeem the slaves, when the purchasor in the meantime had run all the risk of their lives, and had been at the trouble and expense of rearing; and where, in the first instance, he had not only paid the full value of them, but would have been deprived of laying out his money for other slaves, unconditionally."

The principles and reasoning laid down by the court of appeals of Virginia, we apprehend apply with a good deal of force to the present case. Indeed, in the Virginia case, the term *security* is used. Thus far, the language is technically a mortgage, but the intention is taken into consideration, and upon principle, the language is held to be doubtful; and the vendee having no other security for his money, the instrument is held to be a conditional sale, notwithstanding, from the report of the case, it would appear that the sum paid was not the full value, but was probably as much as the negroes would have brought under the hammer. In this case the negroes were already under execution, and the price paid is proven to be more than the ordinary selling price of negroes. Johnson refuses to lend money, but at the very moment of signing, called it a purchase, and in the presence of Clark and the subscribing witness, complained that he had paid too much.

The instrument in question, it is true, partakes somewhat of the form, although it is far from being technically a mortgage. A mortgage is in form like any absolute deed of conveyance, except that in reciting the consideration, it alludes to the debt, which should generally be set out at length in the condition; and the sale is defeasible upon the payment of the debt therein named. The law, however, will construe that to be a mortgage which the parties intended should be a mortgage, and not an absolute sale. Because the condition may be on a counter letter or separate paper, or may even exist in parol, as the authorities above cited abundantly show. Now, in the instrument under consideration, the form of conveyance is absolute—the delivery accompanies the act—no separate security is taken for

the money—no interest is stipulated for; nor is there any reservation made as to hiring, increase, or death.    The condition, it is true, gives to Clark, or his legal representatives, the privilege of re-paying the purchase-money within twelve months, "then the above deed of bargain and sale to be void in law, else to be and remain in full force and virtue."    Now, a mortgage usually recites that upon the payment of the note, bond, or bill, then the same, as well as the said mortgage, to be void.    If the party was really executing a mortgage, he ought to have explained himself in terms less strong than that set forth.    A bargain and sale was originally a contract for the conveyance of land for a valuable consideration; and though the land itself would not pass without livery, the contract was sufficient to raise a use, which the bargainor was in equity bound to perform.    *Chudleigh's case,* 1 *Coke,* 121, *b.*    Nothing can be more liberal than the rules of law as to the words requisite to create a bargain and sale.    There must be a valuable consideration, and then any words that will raise a use, will amount to a bargain and sale.    2 *Just.* 672.    *Jackson vs. Fish,* 10 *J. R.* 456, 457.    After the statute of uses was passed, the uses which were raised and vested in the bargainee, by means of the bargain, were annexed to the possession, and by that operation the bargain became at once a sale and complete transfer of title.    2 *Black. Com.* 335.    4 *Kent Com.* 495, 496.

In the case under consideration, the possession accompanied the deed.    The property vested in the grantee, with a privilege to the grantor to re-purchase at a price stipulated, within one year.    This privilege he might, or might not exercise if he chose.    If he failed to do so, the grantee had no power either to compel him to do so, or to refund.    If he went into equity, the grantor might answer him— you purchased the negroes at a stipulated price—you took no security for the re-payment of the money—you treated the instrument as a purchase, and not as a mortgage—you cannot compel me to receive my own rights.    Much less had Johnson a remedy for his money, had the negroes died; because the risk was all his own, and he chose not to provide for such a contingency.    You suffered me to call the instrument "a bargain and sale"—you caused me to create an use to

yourself—you went into possession, and thereby your title became absolute.

The case of *Porter et al. vs. Clements*, 3 *Ark. Rep.* 364, although not exactly in point, (for every cause of this class depends upon its own peculiar circumstances,) may be referred to with profit. Here Phillips, the vendee, signed an obligation, reciting that Edmund Clements, and Louisa Clements, his daughter, had sold and delivered to him the four negroes in question, for the sum or $400; and he annexed a condition that should they, within two years and a half, pay him $500, then, he obligated himself to re-convey to them, the aforesaid negro servants, provided they did not die, run away, or be stolen. The court here very properly determine, that this was not a mortgage, but a conditional sale. The only wonder seems to be, that there ever should have been any doubt about it. The negroes were sold to Phillips for $400, and being personal chattels, they passed by delivery. And he executed this as a covenant, by which he promised to re-convey upon payment of $500, a sum greater than the sum advanced. In the case at bar, Clark executes the conveyance, which he calls a "bargain and sale," and he accompanies the same by delivery, reserving to himself the right to repay the purchase money within twelve months. But he executes no covenant by which he acknowledges an indebtedness; nor can it be gathered from the instrument, that there is any certain obligation on his part to do so. By repaying the money, he had a right to demand possession of the negroes, but should he fail to do so, where was the remedy of Johnson? Had he any contract which he could enforce *in personam* or *in rem?* We are of opinion that he had not. In the case of *Conway vs. Alexander*, above cited, we have seen that if adults choose to make these conditional sales to become absolute on a certain contingency, courts of chancery will not become their guardians, nor will they do more than inquire what were their intentions. And in the case from Virginia, we have seen that a party will not be permitted to lie by, and after the negroes have increased in numbers, or in value, or their services may have amounted to a considerable amount, come forward and demand the property. All these cases, it will be observed, turn not so much upon the principle of policy, as

upon the proposition that no instrument which was intended to be a mortgage, can be converted into a sale conditional, or absolute, nor *vice versa.*

It being settled, then, that the instrument in question was a sale subject to become void upon the re-payment of the money; or a conditional sale, to become absolute upon failure thereof, it becomes necessary to consider the next question, viz: Did Johnson, by any act of his, prevent Clark from repaying the money according to contract, and if so, what are the equities between the parties? The allegation in the bill is, not that Clark tendered the money, and thereby imposed a trust upon Johnson, but he charges, that after the advance of the money and the delivery of the negroes, Johnson agreed to take three of the negroes at a price to be fixed by himself; that complainant being unable to attend, Stewart attended for him; that Johnson fixed a price on the three negroes, and Stewart tendered him the balance of the money; that Johnson counted it, and would then have nothing further to do with Stewart. Now here is an allegation inaptly made and worse proven. Stewart very indifferently proves his agency, but this we may pass by. His evidence does not prove the allegation. He says nothing about an agreement on Johnson's part to take a portion of the negroes absolutely. On the contrary, he pretends to have offered the whole amount advanced. This proof certainly does not support the allegation; because, were it proven that the advance was a loan and Johnson afterwards agreed to take three of the negroes pledged as a security, as absolute payment of part of the advance, surely he should not now be held to re-convey these same negroes. It will at once be seen that, having the negroes in possession, (even admitting that they were held as security) Clark might sell his equity of redemption as well to Johnson as any other person. The same strictness is not required in chancery proceedings as at common law; but still it may be laid down as a general rule, that a party cannot support a material allegation in his bill by bringing evidence of a wholly different character. The complainant charges a given case or state of facts: the defendant positively denies it. The complainant then offers evidence, which would support a different equity, and possibly might materially change the

result.   Such looseness is not to be indulged.  See 1 *Mad. Chan.* 384. *Mortimer vs. Orchard*, 2 *Ves.* 243.

The evidence of Hopson is not less objectionable.   Aside from its not being directly charged in the bill, it proves no tender or demand, but a mere conversation.   These points are merely referred to, because, it having been settled that the transaction was not a mortgage to secure a loan or debt, but a conditional sale, the principle here involved is settled in the case of *Porter et al. vs. Clements*, 3 *Ark. Rep.* 385.   The court there say, "If the covenant was broken by Phillips, the parties have their remedy against his estate for damages; and that, although the period for re-purchase was two years and a half, yet as soon as Phillips, by selling the property or any portion of it to Porter or any other person, placed it out of his power to comply with his covenant, it was broken, and an action for damages could have been sustained against him at law.   The object of taking a mortgage is always to secure money loaned or due, and to compel a payment with interest.   But here the object on both sides was a sale, and only a collateral right to re-purchase by a given day.   They were under no obligation to make the purchase, nor were they responsible to either Phillips or Porter, if the parties were to do so.   If all the slaves had died, Phillips must have sustained the loss.   So Porter would have no recourse on any person if they had all died in his possession. and as Clements and his daughter Caroline have a plain, complete, and adequate remedy at law against Phillips' representatives, for any damages they may have sustained by a breach of covenant, a court of equity cannot have jurisdiction over it."

These two cases will be found analogous, so far as to settle that if Clark sold Johnson his negroes, with the agreement, on the part of Johnson, that Clark might re-purchase them within twelve months, and Johnson prevented him from doing so, he and his estate are liable for damages in an action at law.   Or upon a case properly charged and made out, a court of chancery might have held that Johnson, by putting it out of the power of Clark to redeem the negroes, in the terms of the condition, thereby made himself the trustee of Clark, his *cestui que trust*, and that he should account for the use of the trust property, not from the time of the advancement of the money, but

from the time of the tender. But in this case, he chooses to charge a mortgage and a subsequent new contract, and to call upon the conscience of the defendant to respond to these substantive allegations. The defendant positively denies both allegations. It was then certainly competent for both parties to adduce evidence in order to determine the character of the instrument, and the existence of a new contract, varying the condition of the original covenant. *Lewellin vs. Owen, Iredell's N. C. Dec.* 1840, *vol.* 1, *No.* 2, *p.* 296. *King vs. King, ib.* 189. ·These cases abundantly show, that where the party, by his own act, has made the answer evidence in the cause, and it is directly responsive to the bill, it becomes legitimate proof to establish the nature of the transaction. *McDonald vs. Leonard, ib.*

The decree of the circuit court must therefore be reversed, and the cause remanded to the court. below, with instructions to decree in accordance with this opinion.

Petition for reconsideration filed, and overruled at January term, A. D. 1844.